**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

**CENTER FOR ENVIRONMENTAL HEALTH, et al**

*Plaintiffs,*

v.

**INHANCE TECHNOLOGIES LLC**

*Defendant.*

Case No. 1:22-cv-03819-JEB

**MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

**Hon. James Boasberg**

Robert M. Sussman
SUSSMAN & ASSOCIATES
DC BAR NO. 226746
3101 Garfield Street, NW
Washington, DC 20008
(202) 716-0118
bobsussman1@comcast.net

*Attorneys for Plaintiff Center for Environmental Health*

Paula Dinerstein
General Counsel
PUBLIC EMPLOYEES FOR ENVIRONMENTAL RESPONSIBILITY
DC BAR NO. 333971
962 Wayne Avenue, Suite 610
Silver Spring, MD 20910
202-265-7337
pdinerstein@peer.org

*Attorneys for Plaintiff Public Employees for Environmental Responsibility*

**TABLE OF CONTENTS**

**TABLE OF CONTENTS** ........................................................................ i

**TABLE OF AUTHORITIES** ...................................................................... ii

**INTRODUCTION AND SUMMARY** .............................................................. 1

**BACKGROUND** ......................................................................................... 4

**I. Statutory and Regulatory Framework** ................................................ 4

**II. The 2020 LCPFAC SNUR** ................................................................... 7

**III. EPA's Two-Year Delay Before Filing Suit** ........................................... 9

**ARGUMENT** ........................................................................................... 12

**I. On a Motion to Dismiss Based on the Diligent Prosecution Bar, Courts Must Apply Federal Rule 12(b)(6) and Accept the Allegations in Plaintiffs' Complaint as True** ........................................................................................ 12

**II. The Motion to Dismiss Should be Denied Because EPA Has Taken No Action to Diligently Prosecute its Case and Obtain an Injunction Against Inhance** ...... 16

**III. The Remedies Requested in Plaintiffs' Amended Complaint Are Authorized under Section 20 of TSCA** .............................................................. 18

**CONCLUSION** ......................................................................................... 19

## TABLE OF AUTHORITIES

**Cases**

*Adkins v. Vim Recycling, Inc.*, 644 F.3d 483 (7th Cir. 2011) .................................. 13, 14, 15, 17

*Arbaugh v. Y&H Corp.*, 546 U.S. 500 (2006) ..............................................................14

*Baughman v. Bradford Coal Co., Inc.*, 592 F.2d 215 (3d Cir. 1979) ........................................13

*Cebollero-Bertran v. P.R. Aqueduct & Sewer Auth.*, 4 F.4th 63 (1st Cir. 2021)....................14, 15

*Center for Biological Diversity v. U.S. Int'l Dev. Fin. Corp.*, 585 F. Supp. 3d 63 (D.D.C. 2022) ........................................................................................................14

*Friends of Milwaukee's Rivers v. Milwaukee Metro. Sewerage Dist.*, 382 F.3d 743 (7th Cir. 2004) ........................................................................................................15

*Grp. Against Smog & Pollution, Inc. v. Shenango Inc.*, 810 F.3d 116 (3d Cir. 2016) ................14

*Gwaltney v. Chesapeake Bay Foundation*, 484 U.S. 49 (1987) ..................................................13

*Karr v. Hefner*, 475 F.3d 1192 (10th Cir. 2007).........................................................................14

*Knee Deep Cattle Co. v. Bindana Inv. Co.*, 94 F.3d 514 (9th Cir.1996) ....................................17

*La. Envtl. Action Network v. City of Baton Rouge*, 677 F.3d 737 (5th Cir. 2012) ................13, 14

*New York Coastal Fishermen's Assn. v. Dept. of Sanit.*, 772 F. Supp. 162 (S.D.N.Y. 1991) ......15

*Piney Run Pres. Ass'n v. County Comm'rs of Carroll Cnty.*, 523 F.3d 453 (4th Cir. 2008) ..13, 14

*Pub. Interest Research Grp. v. Rice*, 774 F. Supp. 317 (D.N.J. 1991) .......................................15

*Schmidt v. U.S. Capitol Police Bd.*, 826 F. Supp. 2d 59 (D.D.C. 2011).....................................14

*United States of America v. Inhance Technologies LLC*, Civil Action No 5:22-cv-05055-JFM (E.D. Pa. Dec. 19, 2022) ...........................................................................................3, 16

**Statutes**

15 U.S.C. § 2601(b) ....................................................................................................4

15 U.S.C. § 2602.........................................................................................................18

15 U.S.C. § 2604.....................................................................................................5, 18

15 U.S.C. § 2610.........................................................................................................10

15 U.S.C. § 2614.......................................................................................................5, 6

15 U.S.C. § 2615...........................................................................................................6

15 U.S.C. § 2616...........................................................................................................6

15 U.S.C. § 2619..................................................................... 1, 3, 4, 7, 16, 17, 18, 19

33 U.S.C. § 1365.........................................................................................................12

42 U.S.C. § 6972.........................................................................................................12

42 U.S.C. § 7604.........................................................................................................12

National Defense Authorization Act of 2020, PL No. 116-92 ………………………………… 7

**Rules and Regulations**

40 C.F.R. § 721.5 .......................................................................................................19

40 C.F.R. § 721.35 .........................................................................................................6

40 C.F.R. § 721.9582………………………………………………………. . ……………. 9

40 C.F.R. § 721.10536………………………………………………………………...2

Fed.R.Civ.P 12(b)(1)………………………………………………………………. 13, 14, 15

Fed.R.Civ.P. 12(b)(6) ……………………………………………………………4, 14. 15

**Other Authorities**

80 Fed. Reg. 2885 ..........................................................................................................7

85 Fed. Reg. 12479 ....................................................................................................7

85 Fed. Reg. 45109 ....................................................................................................2, 7, 8

88 Fed. Reg. 10320 ....................................................................................................2

## INTRODUCTION AND SUMMARY

This is a citizens' enforcement suit brought by the Center for Environmental Health ("CEH"), Public Employees for Environmental Responsibility ("PEER") and Jay De La Rosa under section 20 of the Toxic Substances Control Act ("TSCA"). Plaintiffs seek to restrain ongoing TSCA violations by defendant Inhance Technologies LLC ("Inhance") that pose a risk of serious and irreversible harm to human health and the environment.

Plaintiffs CEH and PEER are non-profit organizations headquartered in Oakland, California and Silver Spring, Maryland who are dedicated to protecting the public from environmental and health hazards and promoting a high standard of environmental ethics, scientific integrity, and legal accountability. Amended Complaint ("Am. Com") (ECF10) at ¶¶12-30. Plaintiff Jay De La Rosa is a furniture maker and do-it-yourself car mechanic in Los Angeles, California who is concerned about his ongoing exposure to toxic substances from plastic containers he uses on a daily basis. Am. Com. at ¶31.

Headquartered in Houston, Texas, defendant Inhance is engaged in treating high-density polyethylene ("HDPE") and other plastic containers by "fluorination," a process in which fluorine gas is applied to the container under high temperatures in order to improve its barrier properties. Am. Com. at ¶¶32-33. Inhance is the principal U.S. supplier of post-mold fluorination services to manufacturers and suppliers of plastic packaging and performs fluorination at eleven facilities across the U.S. Following treatment at one of these facilities, the containers are returned to Inhance customers and then distributed in commerce, where they are filled with products for myriad industrial, commercial and consumer uses. Plaintiffs understand that tens of millions of containers are fluorinated each year and can be found in nearly every sector of the economy.

Testing conducted by the Environmental Protection Agency ("EPA") and other researchers has shown that fluorination results in the formation of dangerous per- and polyfluoroalkyl substances ("PFAS"), a class of chemicals that has raised deep concern around the globe because of its persistence, prevalence in people, wildlife and the environment, and harmful effects on human health and ecosystems. Am. Com. at ¶¶9-10. EPA has designated PFAS as one of its highest priorities for pollution reduction, research and regulation.[1] To minimize harm to health and the environment, on July 27, 2020, EPA promulgated a significant new use rule ("SNUR") under section 5(a) of TSCA for a subset of PFAS called long-chain perfluoroalkyl carboxylate ("LCPFAC") substances. 85 Fed. Reg. 45109 (July 27, 2020), 40 C.F.R. § 721.10536. These substances, which include the highly toxic perfluorooctanoic acid ("PFOA"), were phased out by their major manufacturers in 2015. Consistent with TSCA, the SNUR seeks to assure that, except for certain grandfathered uses, LPCFACs cannot be produced unless the manufacturer has filed a Significant New Use Notice ("SNUN") and EPA has carefully reviewed the proposed production and use activities and restricted them as necessary to protect against unreasonable risks of injury.

The PFAS formed during fluorination include several LPCFACs subject to the SNUR. Fluorination was not one of the grandfathered uses identified in the SNUR, so Inhance was subject to its restrictions.[2] Nonetheless, after the SNUR took effect in the fall of 2020, Inhance did not cease production of LCPFACs formed during fluorination and submit SNUNs. As a result of testing by plaintiff PEER, the presence of LCPFACs in fluorinated containers came to EPA's attention in late 2020, prompting a lengthy give-and-take between the Agency and Inhance over

[1] EPA, *PFAS Strategic Roadmap: EPA's Commitments to Action 2021-2024*, October 2021, https://www.epa.gov/pfas/pfas-strategic-roadmap-epas-commitments-action-2021-2024.

[2] After suits had been filed by EPA and plaintiffs, the Agency finally received nine SNUNs from Inhance on December 30, 2022, which are now under review. The SNUNs appear to be for nine LCPFACs formed during fluorination. 88 Fed. Reg. 10320 (Feb. 17, 2023).

the next two years. Am. Com. at ¶¶75-93. During this period, EPA's own testing confirmed the formation of LCPFACs during fluorination and it advised Inhance it was in violation of the SNUR and needed to submit SNUNs. Am. Com. ¶¶87-91. However, defendant neither filed SNUNs nor ceased LCPFAC production in compliance with the SNUR and EPA failed to take enforcement action until the end of 2022.

On October 21, 2022, after non-compliance with the SNUR had continued unabated for over two years, PEER and CEH sent letters to EPA and Inhance advising that they intended to file suit to restrain the ongoing violations. Another notice letter was submitted by plaintiff Jay de la Rosa on November 17, 2022. Am. Com. at ¶¶55-60. These letters were submitted pursuant to section 20(b)(1) of TSCA, 15 U.S.C. §2619(b), under which citizens must provide notice at least 60 days before commencing enforcement actions. Several weeks after receiving plaintiffs' notice letter, EPA finally filed suit against Inhance on December 19, 2022, in the Eastern District of Pennsylvania.[3] PEER and CEH followed with their own suit in this Court eight days later on December 27, 2022. As noted, Inhance finally filed SNUNs shortly before these suits were filed but has refused to cease production during EPA's review of the SNUNs are required by TSCA.

Inhance has moved to dismiss plaintiffs' Amended Complaint under section 20(b)(1)(B), which bars a citizens' enforcement suit "if the Attorney General has commenced and is diligently prosecuting a civil action in a court of the United States to require compliance with this Act or with such rule or order." 15 U.S.C. § 2619(b)(1)(B). Several courts of appeals have held that this

[3] *United States of America v. Inhance Technologies LLC*, Civil Action No 5:22-cv-05055-JFM (E.D. Pa. Dec. 19, 2022). The Complaint was heavily redacted because of extensive claims of Confidential Business Information ("CBI") by Inhance. After reaching agreement with Inhance counsel, EPA moved to unseal the Complaint and the Court granted the motion on January 19, 2023. The unredacted complaint was filed by plaintiffs with this Court (ECF 11). On February 21, 2023, in the Eastern District of Pennsylvania case filed by EPA, Inhance filed a motion to dismiss the complaint (ECF 10).

bar is not jurisdictional and motions to dismiss are governed by Rule 12(b)(6) of the Federal Rules of Civil Procedure ("FRCP"), under which the allegations in plaintiffs' Complaint must be accepted as true and construed in plaintiffs' favor.

Applying this standard, the motion to dismiss should be denied. While EPA may have filed suit eight days before plaintiffs, this is not enough to defeat a citizens' suit under section 20(b)(1)(B) of TSCA. EPA must also be "diligently prosecuting" its case against Inhance. Two months after filing suit, however, EPA has not taken any action to obtain administrative, civil or criminal remedies against Inhance's unlawful conduct. Indeed, as recounted in plaintiffs' Amended Complaint, the troubling history of EPA's delay and equivocation over the last two years raises serious questions whether it has the will and commitment to stop Inhance's knowing and willful TSCA violations using the civil, administrative and criminal tools at its disposal. Under Rule 12(b)(6), the Court has no alternative but to conclude that at this time EPA is not "diligently prosecuting" its case against Inhance and plaintiffs' suit in this Court to restrain Inhance's TSCA violations is not barred from proceeding.

## BACKGROUND

### I. Statutory and Regulatory Framework

TSCA was enacted in 1976 to create a national program for assessing and managing the risks of chemicals to human health and the environment. Among the goals stated in TSCA section 2(b), 15 U.S.C. § 2601(b), is that "adequate authority should exist to regulate chemical substances and mixtures which present an unreasonable risk of injury to health or the environment." After a multi-year effort to overhaul and strengthen its key provisions, TSCA was amended by the Frank R. Lautenberg Chemical Safety for the 21st Century Act ("LCSA"), which took effect on June 11, 2016. These TSCA amendments strengthen EPA's chemical regulatory authorities throughout the law, including in section 5, which requires EPA to review

new chemicals and significant new uses of existing chemicals and protect against their risks to health or the environment from these substances before they enter commerce. 15 U.S.C. §2604.[4]

_SNUR Requirements under TSCA_. Section 5(a)(2) of TSCA, 15 U.S.C. § 2604(a)(2), authorizes EPA to designate by rule certain uses of chemical substances as "significant new uses." Under section 5(a)(1)(A)(ii) and 5(a)(1)(B), upon promulgation of such a SNUR, manufacturing and processing of a substance for the designated uses are prohibited unless the firm seeking to conduct these activities has submitted a SNUN to EPA at least 90 days before their initiation and the Agency has completed the statutory review process. During this process, section 5(a)(3) directs EPA to determine whether the new use may present an unreasonable risk of injury to health or the environment. The substance may be manufactured or processed for the significant new use without restriction only if EPA determines under section 5(a)(3)(C) that the use is not likely to present an unreasonable risk. If EPA instead finds that the use may present an unreasonable risk of injury or there is insufficient information for a reasoned evaluation of its health or environmental effects, it must prohibit or restrict the use by an order issued under section 5(e). In cases where EPA determines that the use fact presents an unreasonable risk, an order under section 5(f) must be issued protecting against the risk.

_EPA Enforcement Remedies for SNUR Violations_**.** There are multiple civil and criminal remedies available to EPA in response to violations of SNURs. Section 15 of TSCA, 15 U.S.C. §2614, provides that it is unlawful for any person to:

---

[4] One goal of the 2016 amendments was to remove impediments to effective regulation by eliminating any consideration of costs and other non-risk factors in determining whether new chemicals or significant new uses may present an unreasonable risk of injury and by providing for EPA to take action to address such risks before they enter commerce. Thus, sections 5(a)(3), 5(e) and 5(f) contain clear language that costs and other non-risk factors are irrelevant to EPA's determinations of safety for significant new uses and the orders it issues to protect against their unreasonable risks.

"(1) fail or refuse to comply with any requirement of this title or any rule promulgated . . . under this title; or . . . (3) fail or refuse to . . . submit reports, notices, or other information; . . . as required by this Act or a rule thereunder;"

Manufacture (including import) and processing of substances subject to a SNUR without complying with SNUR obligations are thus unlawful as a violation of both a "requirement of this title" (section 5(a)(1)) and a "rule promulgated under this title" (section 5(a)(2)). Accordingly, EPA regulations governing the submission and review of SNURs (40 C.F.R. Part 721) designate SNUR violations as a prohibited act under section 15 of TSCA. 40 C.F.R. § 721.35.

SNUR and other violations of section 15 are actionable in suits by EPA under section 17(a)(1) of TSCA, 15 U.S.C. § 2616(a)(1), authorizing district courts to "restrain any person from taking any action prohibited by section 5 . . . or by a rule or order under section 5." Under section 17(a)(1)(D), in addition to enjoining violations, the court may invoke a broad range of equitable remedies, including requiring a person in violation of SNUR obligations to give notice of the potential risk of injury to users and distributors of the unlawfully produced substance and to the general public.

Under section 16(a) of TSCA, 15 U.S.C. § 2615(a), EPA may institute an administrative proceeding against violators of SNUR requirements to impose civil penalties of up to $37,500 for each day of violation. Knowing and willful violators of SNURs are also subject to criminal prosecution under section 16(b), which can result in fines of up to $50,000 for each day of violation and imprisonment for up to one year or fines of up to $250,000 and imprisonment for up to 15 years if the violator knows that its violation puts an individual in imminent danger of death or serious injury.

*TSCA Citizens' Suit Provisions.* Complementing the enforcement mechanisms available to EPA in sections 16 and 17, section 20(a)(1) of TSCA, 15 U.S.C. §2619(a)(1), provides that "any person may commence a civil action . . . against any person . . . who is alleged to be in violation of this Act or any rule promulgated under section [5] . . . to restrain such violation." Section 20(b)(1)(A), 15 U.S.C. §2619(b)(1)(A), provides that no action to restrain a violation of TSCA may be commenced "before the expiration of 60 days after the plaintiff has given notice of such violation (i) to the Administrator and (ii) to the person who is alleged to have committed such violation." Section 20(b)(1)(B) also bars citizens' suits "if the Attorney General has commenced and is diligently prosecuting a civil action in a court of the United States to require compliance with this Act or with such rule or order." 15 U.S.C. § 2619(b)(1)(B). If a citizens' suit is precluded because EPA has met these conditions, the citizen "may intervene as a matter of right" in the EPA suit if (as here) it was "commenced after the giving of notice." *Id.*

## II. The 2020 LCPFAC SNUR

A central element in EPA's strategy to address PFAS, the SNUR for LCPFAC substances was proposed on January 21, 2015 (80 Fed. Reg. 2885) and supplemented on March 3, 2020, (85 Fed. Reg. 12479). As directed by Congress in the National Defense Authorization Act of 2020 (Public Law No. 116-92), EPA finalized the LCPFAC SNUR on July 27, 2020 (85 Fed. Reg. 45109). The final SNUR "requires persons to notify EPA at least 90 days before commencing the manufacture (including import) or processing of these chemical substances for the significant new uses described in this notice." As EPA states, "[m]anufacturing (including import) or processing [of LCPFACs] for the significant new use are prohibited from commencing until EPA has conducted a review of the notice, made an appropriate determination on the notice, and taken such actions as are required in association with that determination." 85 Fed. Reg. at 45110.

According to the SNUR, the "term LCPFAC refers to the long-chain category of perfluorinated carboxylate chemical substances with perfluorinated carbon chain lengths equal to or greater than seven carbons and less than or equal to 20 carbons. The category of LCPFAC chemical substances also includes the salts and precursors of these perfluorinated carboxylates." *Id.* at 45112. The SNUR explains that LCPFAC substances "have been found in the blood of the general human population, as well as in wildlife, indicating that exposure to these chemical substances is widespread." *Id*. at 45113. It indicates that "PFOA and its salts, which are considered LCPFAC chemical substances, have been a primary focus of studies related to the LCPFAC class of chemical substances" and that "PFOA is persistent, widely present in humans and the environment, has a half-life in humans of 2.3–3.8 years, and can cause adverse effects in laboratory animals, including cancer and developmental and systemic toxicity." According to EPA, "[h]uman epidemiology data report associations between PFOA exposure and high cholesterol, increased liver enzymes, decreased vaccination response, thyroid disorders, pregnancy-induced hypertension and preeclampsia, and cancer (testicular and kidney)." In addition, "PFOA precursors, chemicals which degrade or may degrade to PFOA, are also present worldwide in humans and the environment and, in some cases, might be more toxic and be present at higher concentrations than PFOA." *Id*.

The basis for the SNUR was EPA's concern that "[i]n the absence of a regulation, manufacture or processing for the significant new uses . . . may begin at any time, without prior notice to EPA." *Id*. at 45113. As it explained, "resumption of past uses of LCPFACs . . . could increase the magnitude and duration of exposure to humans and the environment." *Id*.

From the time it proposed the SNUR in early 2015 to its promulgation in 2020, EPA solicited information from industry on "existing" uses of LCPFACs that were ongoing as of the

proposal date of January 21, 2015. All such uses identified by industry or EPA itself were exempted from the final SNUR at 40 C.F.R. § 721.9582(c)(5). Despite the considerable outreach conducted by EPA, defendant Inhance did not identify formation of LCPFACs during fluorination of plastic containers as an existing use of these chemicals. The final rule rejects industry proposals to establish a "safe harbor" for pre-2015 ongoing uses that were not identified during the rulemaking, explaining that "EPA does not believe there should be a safe-harbor provision for uses not identified as ongoing uses in the SNUR, particularly since notice of the requirements of this action were provided five years ago." *Id.* at 45120.

The LCPFAC SNUR took effect on September 25, 2020. *Id.* at 45109. As of that date, manufacture and processing of LCPFACs subject to the SNUR by Inhance without complying with the rule's requirements violated TSCA.

**III. EPA's Two-Year Delay Before Filing Suit**

Although EPA learned in 2020 of the formation of LCPFACs during fluorination and the presence of these unsafe substances in plastic containers distributed in commerce, it spent two years in an unproductive give-and-take with Inhance. During this period, accumulating evidence underscored the scope and severity of defendant's SNUR violations and months passed without action by Inhance after EPA directed it to comply with TSCA. Yet EPA only took enforcement action after receiving plaintiffs' October 21, 2022, notice of intent to file suit to restrain Inhance's violations.[5]

Between August and October 20, 2020, plaintiff PEER and Massachusetts Department of Environmental Protection ("MADEP") sampled and tested containers of Anvil 10+10®, a

[5] The description of events between 2020 and 2022 in the following paragraphs is based on allegations in plaintiffs' amended complaint, which in turn closely track the allegations in EPA's complaint against Inhance in the Eastern District of Pennsylvania. The text contains references to the corresponding paragraphs of plaintiffs' amended complaint.

pesticide, and detected the presence of multiple PFAS subject to the LCPFAC SNUR. In early September 2020, EPA first became aware of the PFAS contamination data for the Anvil 10+10® mosquito control pesticide. In December 2020, the EPA received unused fluorinated HDPE containers from the distributor of Anvil 10+10® and determined that the containers were a source of PFAS contamination. EPA tested these HDPE containers and detected several PFAS subject to the LCPFAC SNUR in the rinsates (a solvent used to extract chemical compounds). Am. Com. at ¶¶76-79.

On January 14. 2021, EPA issued a lengthy press release "making new information available about EPA testing that shows PFAS contamination from fluorinated containers."[6] Am. Com. at ¶ 80. On the same day, EPA issued a subpoena to Inhance pursuant to Section 11(c) of TSCA, 15 U.S.C. § 2610(c), to obtain information concerning Inhance's fluorination processes. On February 1 and 8, 2021, Inhance responded to EPA's subpoena. Am. Com. at ¶¶81-83.

On March 5, 2021, EPA issued a other press release "confirm[ing] that it has detected eight different PFAS from the fluorinated HDPE containers, with levels ranging from 20-50 parts per billion."[7] EPA committed to "use all available regulatory and non-regulatory tools to determine the scope of this emerging issue and its potential impact on human health and the environment." Am. Com. at ¶84. During this period, based on the information that Inhance had provided, EPA determined that the LPCFAC SNUR applied to Inhance's processes for

---

[6] ENVTL. PROTECTION AGENCY, *EPA Takes Action to Investigate PFAS Contamination*, (Jan. 14, 2021) available at: https://www.epa.gov/newsreleases/epa-takes-action-investigate-pfas-contamination.

[7] ENVTL. PROTECTION AGENCY, EPA Releases Testing Data Showing PFAS Contamination from Fluorinated Containers, (Mar. 5, 2021) available at: https://www.epa.gov/newsreleases/epa-releases-testing-data-showing-pfas-contamination-fluorinated-containers.

fluorinating containers because PFAS are produced as byproducts of the fluorination process. Am. Com. at ¶85.

On March 1, 2022, EPA issued a Notice of Violation ("NOV") informing Inhance that its process for fluorinating HDPE containers produced PFAS subject to the SNUR and that Inhance's manufacturing or processing of such PFAS was a violation of the SNUR in the absence of submission and review of SNUNs. The NOV further stated that if Inhance had not changed its process for fluorinating HDPE containers to prevent the manufacture of LCPFACs, it had to immediately cease the manufacture of PFAS subject to the SNUR and could not resume manufacture until it had submitted a SNUN and EPA had completed its review process and any necessary regulatory action. Am. Com. at ¶¶87-88.

On March 16, 2022, EPA published an open letter to industry stating that "[t]he agency is notifying companies of their obligation to comply with existing requirements under the [TSCA] to ensure unintentional PFAS contamination does not occur."[8] It explained that "long-chain PFAS as defined in EPA's 2020 long-chain perfluoroalkyl carboxylate (LCPFAC) [SNUR] that are found to be present in or on fluorinated polyolefins may be subject to TSCA regulations and enforcement." As EPA elaborated, these PFAS "would be considered byproducts" of the fluorination process that "do not have a separate commercial intent" and, as such, their formation during "the fluorination of polyolefins [would] be a significant new use under TSCA." Am. Com. at ¶89.

Between April and August 2022, the EPA reviewed additional information submitted by Inhance and again determined that Inhance's fluorination of fuel tanks and containers entailed the manufacture of LCPFACs subject to the SNUR. Am. Com. at ¶90. On September 8, 2022, EPA

[8] Envtl. Protection Agency, *Letter to Fluorinated HDPE Industry*, (Mar. 16, 2022) available at: https://www.epa.gov/system/files/documents/2022-03/letter-to-fluorinated-hdpe-industry_03-16-22_signed.pdf.

issued the report of its latest round of testing, concluding that "liquid products packaged in HDPE containers treated with fluorination technology could leach certain PFAS into products from the container walls, even with water-based products." Am. Com. at ¶73. At the same time, EPA issued an announcement reiterating that formation of certain PFAS from the fluorination of polyolefins is subject to its LCPFAC SNUR under TSCA, which "requires industry to notify EPA at least 90 days before starting manufacturing or processing of these chemical substances for this significant new use, so that EPA could review any associated risks and impose any needed protections."[9] Am. Com. at ¶91. It emphasized that the "failure to submit such a notification would be a violation of TSCA" and that "EPA considers any level of PFAS to be potentially toxicologically significant."

On September 7, 2022, Inhance informed EPA that, although it intended to submit SNUNs for PFAS formed during fluorination that were subject to the LCFPAC SNUR, it had no plans to cease its fluorination processes before or during the period of review of the SNUNs. Am. Com. at ¶92. As announced in the February 17, 2023 Federal Register, on December 30, 2022, EPA received nine SNUNs for LCPFACs. The SNUNs were apparently filed by Inhance although the submitter's name is redacted as Confidential Business Information.

## ARGUMENT

### I. On a Motion to Dismiss Based on the Diligent Prosecution Bar, Courts Must Apply Federal Rule 12(b)(6) and Accept the Allegations in Plaintiffs' Complaint as True

Citizen enforcement suits are a common feature of several federal environmental laws.[10] According to the Third Circuit, there is "extensive legislative history to establish that Congress

---

[9] ENVTL. PROTECTION AGENCY, EPA Releases Data on Leaching of PFAS in Fluorinated Packaging, (Sept. 8, 2022) available at: https://www.epa.gov/pesticides/epa-releases-data-leaching-pfas-fluorinated-packaging.

[10] *See* 33 U.S.C. § 1365(b)(1)(B) (Clean Water Act); 42 U.S.C. § 7604(b)(1)(B) (Clean Air Act); 42 U.S.C. § 6972(b)(1)(B) (Resource Conservation and Recovery Act).

intended citizen suits to both goad the responsible agencies to more vigorous enforcement of the anti-pollution standards and, if the agencies remained inert, to provide an alternate enforcement mechanism." *Baughman v. Bradford Coal Co., Inc.*, 592 F.2d 215, 218 (3rd Cir. 1979). The Seventh Circuit has similarly explained that:

> Congress enacted the citizen-suit provisions of [the Resource Conservation and Recovery Act] and other environmental laws because the world is not ideal, because government agencies face many demands on their resources, because administrations and policy priorities change, and because regulatory agencies are subject to the phenomenon known as "agency capture."
>
> . . . . . . . . . . . . . . . . . . . . . .
>
> Congress also chose not to place absolute faith in state and federal agencies. It provided for citizen suits to enable affected citizens to push for vigorous law enforcement even when government agencies are more inclined to compromise or go slowly."

*Adkins v. Vim Recycling, Inc.*, 644 F.3d 483, 499, 501 (7th Cir. 2011). Thus, "[t]he citizen-suit provision is a critical component of the [Clean Water Act's] enforcement scheme, as it 'permit[s] citizens to abate pollution when the government cannot or will not command compliance.'" *La. Envtl. Action Network v. City of Baton Rouge*, 677 F.3d 737, 740 (5th Cir. 2012) (quoting *Gwaltney v. Chesapeake Bay Foundation*, 484 U.S. 49, 62 (1987)).

Congress also wanted to avoid duplicative litigation where EPA is already acting effectively to restrain a violation. However, section 20(b)(1)(B) of TSCA and similar laws do not bar citizens' suits simply because EPA has previously filed a suit against the alleged violator. They also require that the Agency is "diligently prosecuting" its case. This requirement assures that the citizens' suit remedies remain available where the Agency is not forcefully pursuing its case or enters into a settlement that does not adequately address the claims of the citizen plaintiff.

The "diligent prosecution" requirement has received considerable attention in the caselaw, although not in the D.C. Circuit. Earlier decisions addressing motions to dismiss treated

this requirement as jurisdictional and therefore governed by Rule 12(b)(1) of the FRCP. *See Piney Run Pres. Ass'n v. County Comm'rs of Carroll Cnty.*, 523 F.3d 453, 459 (4th Cir. 2008). More recently, however, carefully reasoned decisions from four Circuits have held that the bar is not jurisdictional and motions to dismiss must be addressed under Rule 12(b)(6), allowing dismissal for failure to state a claim. *La. Envtl. Action Network*, 677 F.3d at 745-51; *Adkins*, 644 F.3d at 492-95; *Grp. Against Smog & Pollution, Inc. v. Shenango Inc.*, 810 F.3d 116 (3d Cir. 2016)*; Cebollero-Bertran v. P.R. Aqueduct & Sewer Auth.*, 4 F.4th 63 (1st Cir. 2021).

Because a motion to dismiss under Rule 12(b)(1) "presents a threshold challenge to a court's jurisdiction," *Center for Biological Diversity v. U.S. Int'l Dev. Fin. Corp.*, 585 F. Supp. 3d 63, 69 (D.D.C. 2022), plaintiffs "bear the burden of proving by a preponderance of evidence that the Court has subject-matter jurisdiction" over their claims. *Schmidt v. U.S. Capitol Police Bd.*, 826 F. Supp. 2d 59, 69 (D.D.C. 2011). Thus, prior decisions assuming that diligent prosecution was a jurisdictional requirement extended deference to EPA or state agencies and set a high bar to demonstrate the absence of diligent prosecution. *Piney Run*, 523 F.3d at 459; *Karr v. Hefner*, 475 F.3d 1192, 1198 (10th Cir. 2007).

However, as the First Circuit emphasized in *Cebollero-Bertran,* "the Supreme Court has cautioned that cases which refer to a rule as jurisdictional without analysis should not be relied on as statements of law" but must be treated as "'drive-by jurisdictional rulings' that should be accorded 'no precedential effect.'" 4 F.4th at 70-71 (quoting *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 511 (2006)). Joining three other Circuits, the First Circuit closely analyzed the wording, intent, and legislative history of the diligent prosecution bar and concluded that, because there was no "clear statement that it is intended to govern the courts' jurisdiction," it "does not implicate

subject matter jurisdiction" and motions to dismiss fall under FRCP 12(b)(6). 4 F.4th at 71-72 (citing *Grp. Against Smog & Pollution, Inc.,* 810 F.3d at 123).

As the First Circuit emphasized, in contrast to jurisdictional challenges under Rule 12(b)(1), motions under Rule 12(b)(6) "are always facial, not factual, challenges to the complaint. To survive a Rule 12(b)(6) motion to dismiss, the facts alleged in the complaint, taken as true by the court, which also draws all inferences in the pleader's favor, 'must state a plausible, not merely conceivable, case for relief.'" *Id.* at 70. After emphasizing that "'[i]t is the Court's duty to probe the government's prosecutorial vigor,'" the First Circuit reversed the district court's finding of diligent prosecution on the basis that the citizen plaintiff alleged that "sewage overflows continue unabated because the EPA is not ensuring that PRASA complies with the consent decree" prohibiting such overflows. *Id*. at 73-75 (citation omitted). Here, as discussed below, EPA is likewise failing to prevent Inhance's continuing unlawful manufacture of LCPFACs despite the enforcement and litigation tools available to do so.

Other courts applying FRCP 12(b)(6) have similarly rejected motions to dismiss where plaintiffs alleged inadequate prosecution by federal or state agencies. *See, e.g.*, *Adkins*, 644 F.3d at 494 (rejecting diligent prosecution bar because earlier state enforcement action allegedly did not fully overlap with claims in federal citizens' suit); *Friends of Milwaukee's Rivers v. Milwaukee Metro. Sewerage Dist.*, 382 F.3d 743, 754 (7th Cir. 2004) (reversing dismissal on diligent prosecution grounds because "[a] judicial action that never resulted in any legally binding agreement to resolve the violations alleged by the plaintiffs . . . is not a diligent prosecution"); *New York Coastal Fishermen's Assn. v. Dept. of Sanit.*, 772 F. Supp. 162, 166 (S.D.N.Y. 1991) (rejecting reasonable prosecution bar where "it could not be said "with any confidence that the conclusion of the Government's litigation w[ould] address or encompass the specific claims of the

plaintiff"); *Pub. Interest Research Grp. v. Rice*, 774 F. Supp. 317, 326 (D.N.J. 1991) (court declines to dismiss citizens' enforcement suit where "it represents the vindication of the plaintiffs' right to bring suit when the Agency cannot or will not protect the environment").

### II. The Motion to Dismiss Should be Denied Because EPA Has Taken No Action to Diligently Prosecute its Case and Obtain an Injunction Against Inhance

This case provides a compelling example of the importance of citizens' enforcement. EPA filed its Complaint against Inhance two months ago. If the mere filing of this Complaint were enough to dismiss plaintiffs' suit, Congress would not have included the additional requirement of "diligent prosecution" in TSCA section 20(b). Yet at this point in time, there is nothing to indicate that EPA is "prosecuting" its case, let alone doing so "diligently." Given the abundant indications that Inhance is endangering the public through the production of dangerous PFAS during fluorination and knowingly violating the LCPFAC SNUR (Am. Com. at ¶¶8-10), EPA would have been expected to seek an injunction restraining Inhance's unlawful conduct when it filed suit or soon thereafter. But not only did EPA fail to file for an injunction at the earliest possible date, but it agreed to a waiver of service pursuant to FRCP 4(d), giving Inhance until February 21 to respond to the complaint instead of the usual 21 days, which would have required an answer by January 8, 2023.[11]

Lack of evidence cannot explain this delay in seeking an injunction since EPA has been investigating Inhance for over two years, during which the Agency has conducted testing, issued a subpoena, had the opportunity to consult numerous technical experts knowledgeable about PFAS, and received voluminous information from the company, including the nine detailed SNUNs now under review. Whatever the explanation, the Ninth Circuit has held that "the phrase 'has

[11] *United States of America v Inhance Technologies*, ECF 5. Now that Inhance has filed a motion to dismiss, EPA may be further delayed in seeking an injunction.

commenced and is diligently prosecuting' . . . requires an inquiry as to whether the government was diligently prosecuting its action *at the time when the citizen filed his or her complaint*." *Knee Deep Cattle Co. v. Bindana Inv. Co.*, 94 F.3d 514, 516 (9th Cir.1996) (emphasis added). However, between the filing of plaintiffs' suit on December 27, 2022, and today, EPA has remained inert, failing not only to prosecute its suit but to seek civil or criminal penalties for Inhance's SNUR violations under section 16 of TSCA.[12]

The troubling history of EPA's lethargy in addressing Inhance's TSCA violations starting in late 2020 through December 2022 is a further important reason to question its will and commitment to prosecute its case diligently. As described above, EPA failed to act on its own test data and other information demonstrating the formation of LCPFACs during fluorination two years ago and took no enforcement measures to stop Inhance's knowing and willful violations of the LCPFAC SNUR even after putting Inhance on notice of its non-compliance and asking it to cease the production of these unsafe substances. EPA's passivity is particularly disturbing in light of its recognition of the serious risks to health and the environment presented by PFOA and other LCPFACs and the widespread distribution and use of fluorinated containers throughout the economy, which is likely resulting in extensive public exposure to these high-concern substances. Indeed, had plaintiffs not threatened to sue Inhance under section 20 of TSCA in October, EPA might still be hesitating to file suit today. EPA's two years of inaction after it learned that Inhance was violating the SNUR and the lack of forward movement in the case it belatedly filed confirm

---

[12] If EPA aggressively pursues its case, there might later be a basis to revisit application of the "reasonable prosecution" bar. The Seventh Circuit has opined that the limit on citizen suits in environmental laws "has the potential to ebb and flow depending on whether the government agency is 'diligently prosecuting' an earlier lawsuit. . . .[T]he citizen suit could disappear, return, and disappear again, depending on the government agency's changing approach to its own enforcement action." *Adkins*, 644 F.3d at 492.

that there is no basis to dismiss plaintiffs' amended complaint because of EPA's "diligent prosecution."

### III. The Remedies Requested in Plaintiffs' Amended Complaint Are Authorized under Section 20 of TSCA

Inhance also argues that the claims in plaintiffs' amended complaint "overreach" because they go beyond the relief available in citizens' suits under TSCA section 20. A comparison of the prayer for relief in the amended complaint with the text of section 20 readily refutes this argument.

Paragraph 107 of the amended complaint seeks a court order directing defendant to:

> (i) cease and desist from all manufacture and processing of LCPFAC substances during the fluorination of plastic containers until and unless it has fully complied with the requirements of the LCPFAC SNUR and TSCA section 5(a)(3) and EPA has completed its review of the its SNUN and taken all actions necessary under TSCA section 5 to protect human health and the environment, (ii) stop distributing all such fluorinated containers in commerce, and (iii) inform all purchasers and recipients of these containers that their activities comprise unlawful processing of LCPFACs under the SNUR and must cease until and unless the SNUN review and regulatory process have been completed.

These remedies fall within the scope of relief under section 20(a) because they would "restrain . . .[a] violation of this Act or any rule promulgated under section [5]." 15 U.S.C. § 2619(a).

First, Inhance's ongoing manufacture of LCPFACs before the end SNUN review period and without EPA completing its evaluation of the SNUNs and any necessary regulatory action is both a continuing violation of section 5(a) of TSCA and the LCPFAC SNUR promulgated under section 5. Thus, Inhance's ongoing production of these substances can be "restrained" under the plain language of section 20(a). 15 U.S.C. § 2619(a). Second, SNURs promulgated under section 5(a)(1)(B) prohibit not just "manufacture" but "processing" of substances in violation of a SNUR. 15 U.S.C. § 2604(a)(1)(B). The term process is defined by section 3(13) of TSCA to mean "the preparation of a chemical substance or mixture, after its manufacture, for distribution

in commerce." 15 U.S.C. § 2602(13). Thus, actions by Inhance to distribute fluorinated containers to its customers after the unlawful manufacture of LPCFACs would constitute "processing" in violation of the SNUR.

Finally, as described in paragraphs 46 and 102 of the amended complaint, under general EPA regulations for SNURs at 40 C.F.R. § 721.5(d)(1), a person manufacturing a substance subject to a SNUR who "has knowledge that a recipient of the substance is engaging in a significant new use of that substance . . . without submitting a [SNUN]" must cease distribution of the substance unless the person has notified the recipient and received written assurance that it is in compliance with the SNUR. Inhance has plainly failed to comply with these obligations. Accordingly, a court in a citizens' suit may seek to "restrain" these violations by ordering Inhance to inform all purchasers and recipients of fluorinated containers that they contain LCPFACs manufactured in violation of a TSCA SNUR and cannot be further processed or distributed in commerce.

In sum, Inhance's attempt to dismiss plaintiffs' requests for relief as outside the scope of TSCA section 20(a) should be rejected.

**CONCLUSION**

The motion to dismiss the Amended Complaint should be denied.

Respectfully submitted this 23d day of February 2023.

*<u>/s/ Robert M. Sussman</u>*
Robert M. Sussman
SUSSMAN & ASSOCIATES
DC BAR NO. 226746
3101 Garfield Street, NW
Washington, DC 20008
(202) 716-0118
bobsussman1@comcast.net

*Attorneys for Plaintiff Center for Environmental Health*

*/s/ Paula Dinerstein*
Paula Dinerstein
General Counsel
PUBLIC EMPLOYEES FOR ENVIRONMENTAL RESPONSIBILITY
DC BAR NO. 333971
962 Wayne Avenue, Suite 610
Silver Spring, MD 20910
202-265-7337
pdinerstein@peer.org